**EXHIBIT A**

| Filed Date | Category | | Description | Additional Info | |
|---|---|---|---|---|---|
| 9/30/2013 | PET-PL | ... | ORIGINAL PETITION/APPLICATION | PLAINTIFF'S ORIGINAL PETITION, REQUEST FOR TEMPORARY RELEIF, AND REQUEST FOR DECLARATORY RELEIF | ... |
| 9/30/2013 | OTHER | ... | OTHER FILING | BILL OF COSTS | |

Filed
13 September 30 P12:38
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-13-003401

No. D-1-GN-13-003401 _____

| | |
|---|---|
| **Angela Dunn and Simel Bey,** <br> *Plaintiffs ,* <br><br> vs. <br><br> **Resmae Mortgage Corporation; Merscorp Holdings, Inc.; Mortgage Electronic Registration Systems, Inc.; U.S. Bank, N.A., as trustee on behalf of the holders of home equity asset trust 2007-2 home equity pass-through certificates, series 2007-2; Bill Koch; Select Portfolio Services, Inc.; Francia Gamez; Angela Carter; and Shapiro Schwartz, LLP;** <br> *Defendants.* | In the 261ST District Court <br> Travis County, Texas <br><br><br> **Plaintiffs' Original Petition, Request for Temporary Relief, and Request for Declaratory Relief** |

To the Honorable Judge of Said Court:

Now Come Angela Dunn and Simel Bey ("Plaintiffs"), complaining of and about Resmae Mortgage Corporation ("Resmae"); Merscorp Holdings, Inc. ("Merscorp); Mortgage Electronic Registration Systems, Inc. ("MERS"); U.S. Bank, N.A., as trustee on behalf of the holders of home equity asset trust 2007-2 home equity pass-through certificates, series 2007-2 ("US Bank"); Bill Koch ("Koch"); Select Portfolio Services, Inc. ("Select"); Francia Gamez ("Gamez"); Angela Carter ("Carter"); and Shapiro Schwartz, LLP ("Shapiro"); hereinafter referred to as "Defendants," and for cause of action would show unto the Court the following:

### Discovery Control Plan Level

1. Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiffs intend to conduct discovery in this case under Level 2.

### Parties and Service

2. Plaintiffs Angela Dunn and Simel Bey own the house at 10614 Marias River Dr. Austin, TX 78748, in Travis County, Texas.

3. Defendant Resmae Mortgage Corporation ("Resmae") is a foreign entity that has withdrawn its ability to do business in Texas. It may be served by serving the Texas

Secretary of State, who may effectuate service by mailing it to Defendant c/o Citadel LLC, 131 S Dearborn Street, Chicago, IL 60603.

4. Defendant Merscorp Holdings, Inc. ("Merscorp"), is a Delaware corporation that maintains it principal place of business at 1818 Library Street, Suite 300, Reston, Virginia 20190. Merscorp engages in business in Travis County, Texas, but does not maintain a regular place of business in this state or a designated agent for service of process for proceedings that arise out of Merscorp's business done in this state. Merscorp may be served with citation by serving: Bill Beckmann, President and Chief Executive Officer, Merscorp Holdings, Inc. 1818 Library Street, Suite 300 Reston, Virginia 20190.

5. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation and wholly owned subsidiary of Defendant Merscorp. MERS engages in business in Travis County, Texas, but does not maintain a regular place of business in this state or a designated agent for service of process for proceedings that arise out of MERS' business done in this state. MERS may be served with citation by serving: Bill Beckmann, President and Chief Executive Officer, Mortgage Electronic Registration Systems, Inc., 1818 Library Street, Suite 300, Reston, Virginia 20190.

6. Defendant U.S. Bank, N.A., as trustee on behalf of the holders of home equity asset trust 2007-2 home equity pass-through certificates, series 2007-2 ("US Bank") may be served with process through any executive officer at its principle place of business located at 425 Walnut Street, Cincinnati, Ohio 45202-3923, or wherever it may be found.

7. Defendant Bill Koch is, by information and belief, an Assistant Secretary of MERS and may be served at its principal place of business: 1818 Library Street, Suite 300, Reston, Virginia 20190.

8. Defendant Select Portfolio Services, Inc., is a for-profit corporation authorized to do business in Texas. It may be served through its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

9. Defendant Francia Gamez is, by information and belief, a Document Control Officer of Defendant US Bank, and can be served at its place of business: 425 Walnut Street, Cincinnati, Ohio 45202-3923.

10. Defendant Angela Carter is, by information and belief, an employee of Shapiro Schwartz, LLP, and may be served at 5450 N.W. Central Drive, Ste 307, Houston, TX 77092.

11. Defendant Shapiro Schwartz, LLP, is a limited-liability partnership and may be served at is principal place of business, ,5450 N.W. Central Drive, Ste 307, Houston, TX 77092.

Jurisdiction and Venue

12. The subject matter in controversy is within the jurisdictional limits of this Court. This Court has personal jurisdiction because the property that is the subject of this litigation is located in Texas and Defendants are doing business within this state. Venue in this cause is proper in Travis County, Texas pursuant to Section 17.56 of the Texas Business and Commerce Code and under Section 15.001 of the Texas Civil Practice and Remedies Code because this action involves real property, and the property is located in Travis County, Texas.

Facts

13. Plaintiffs are the owners of the property 10614 Marias River Dr. Austin, TX 78748. in Travis County, Texas. The transaction at the root of this case was closed on or about December 20, 2006, whereupon Plaintiffs, in order to purchase the subject property executed a promissory note, payable to the original Lender "Resmae."

14. No other defendant was party to the promissory note nor authorized to collect on such note.

15. Plaintiffs and Resmae, with MERS and a "nominee," formed an enforceable contract called a Deed of Trust. *See* Exh. 1.

16. The Deed of Trust defines Lender as "Resmae" or any holder of the Note who *is also* entitled to receive payments under the Note. At no point is any other party identified as Lender.

17. On December 23, 2009, Defendants Resmae, MERS, Merscorp, Koch, and Select caused to be filed in the Travis County property records an alleged "Assignment of the Deed of Trust," signed by Koch as Assistant Secretary of MERS. MERS purports to assign not just the Deed of Trust, which it has no contractual permission to do, but also the Note, to

which it is not a party. This is a void filing as MERS had no contractual permission to make this assignment. It is void. This filing was not made in the context of litigation.

18. This document cannot assign the note nor the deed of trust as MERS under the deed of trust does not have that authority. This is a void act. Also, it forms a breach of the contract by Resmae, MERS as nominee, Merscorp, and tortious interference with an existing contract by Koch and Select.

19. MERS purports to assign a beneficial interest. MERS has no beneficial interest in the Deed of Trust as no payments go to MERS, it receives no funds from Plaintiffs, and is merely an agent for purposes of recording. MERS, in this assignment, has no justiciable interest in the Note and no right to assign the Note under the Deed of Trust, and is limited, if anything, to those items mentioned in the Deed of Trust, which is to "release or cancel" the Deed of Trust or "foreclose and sell the property." It is simply without actual contractual authority that MERS purported to act in this capacity.

20. Any actions taken by Defendant US Bank purportedly on the Deed of Trust are void as Defendant US Bank is not a party to the Note and has no contractual right, absent demonstrated negotiation of the Note, to collect under the Note.

21. The trust is a Real Estate Mortgage Investment Conduit, or "REMIC." To protect the trust beneficiaries, the property must be transferred into it by the closing date, or else all beneficiaries lose tax exempt status on the entire trust.

22. This trust, Home equity asset trust 2007-2, closed on April 2, 2007. Under New York Trust law, which is construed to protect the beneficiaries of trust from unauthorized trustee actions, the transfer in 2009 was *void ab initio*. *See* New York Estate Powers & Trust Law § 7-2.4 (rendering this action *void*) (emphasis added); *cf.* Turano, Practice Commentaries, McKinney's Consolidated Laws of New York, Book 17B, EPTL § 7-2.4. (The statutory purpose is "to protect trust beneficiaries from unauthorized actions by the trustee.").

23. Where this Court to hold the act as voidable, it would exchange tremendous losses on the REMIC beneficiaries, and permit US Bank to violate New York law, securities law, and destroy the investor's acts as opposed to prohibiting non-judicial foreclosure here. The

benefits of finding US Bank's actions wrong and prohibiting the deed of trust transfer far outweigh any finding that US Bank's actions were proper or voidable.

24. On May 3, 2013, Defendants US Bank, Schwartz, and Gamez caused to be filed in the Travis County property records an alleged "Appointment of Substitute Trustee," signed by Gamez as Document Control Officer for US Bank. This filing was made absent contractual authority and is void. This filing was not made in the context of litigation.

25. On June 16, 2013, Defendants US Bank, Carter, and Schwartz caused to be filed in the Travis County property records a notice of trustee's sale. This filing was void, as US Bank had no authority under the Deed of Trust to make this filing. This filing was not made in the context of litigation.

A.    Claims

Void Foreclosure

26. Plaintiffs re-allege and incorporate by reference the foregoing allegations.

27. Texas law follows the common law rule where a debtor may bring any ground against an assignee to challenge an assignment as void or invalid. *See Tri-Cities Const., Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ); *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.). This was recently acknowledged by the federal 5th Circuit, and is the majority rule followed in Texas. *See Reinagel, et al. v. Deutsche Bank Nat'l Trust Co.*, No. 12-50569, 2013 U.S. App. LEXIS 14089 (5th Cir. (Tex.) July 11, 2013) (reversing district court, Hon. Sam Sparks, on this point of law);

28. Texas Courts also permit challenging the chain of assignments regarding the right of a party to foreclose. *See Priesmeyer v. Pacific Southwest Bank, F.S.B.*, 917 S.W.2d 937 (Tex. App.—Austin 1996); *see also Martin v. New Century Mortgage Co.*, 2012 Tex. App. LEXIS 4705 (Tex. App.—Houston [1st Dist.] 2012); *Austin v. Countrywide Home Loans*, 261 S.W.3d 68 (Tex. App.—Houston [1st Dist.] 2008); *Leavings v. Mills*, 175 S.W.3d 301 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Shepard v. Boone*, 99 S.W.3d 263 (Tex. App.—Eastland 2003).

29. Federal law permits these challenges, too. *See Washington v. JP Morgan Chase*, 2013 U.S. Dist. LEXIS 22735 (W.D. Tex. 2013) (citing to Texas law); *Routh v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 14344 (W.D. Tex. 2013) (same); *Miller v. Homecomings*, 881 F. Supp. 2d 825 (S.D. Tex. 2012) (same, and collecting cases); *Millett v. JP Morgan Chase, N.A.*, 2012 U.S. Dist. LEXIS 40890 (W.D. Tex. 2012) (same); *McCarthy v. Bank of America, N.A.*, 2011 U.S. Dist. LEXIS 147685 (N.D. Tex. 2011) (same); *Norwood v. Chase Home Fin. LLC*, 2011 U.S. Dist. LEXIS 5147 (W.D. Tex. 2011) (same).

30. The note has not been assigned ever by information and belief.

31. As the Note has never been assigned, no debt passed. Any attempt at foreclosure by anyone other than the original note holder is void.

32. All actions of persons attempting to notice foreclosure sale, appoint substitute trustees, and sell the property are void.

33. All actions by MERS in assigning the deed of trust were void; thus, the only way to collect on the Note was a suit.

34. "The course marked out for the trustee to pursue must be strictly followed by him for the method of enforcing the collection through such deeds is a harsh one. The grantor of the power is entitled to have his directions obeyed; to have the proper notice of sale given, to have it to take place at the time and place, ***and by the person appointed by him***." *Fuller v. O'Neal*, 69 Tex. 349, 6 S.W. 181 (1887) (emphasis added; *see also University Savings Assoc. v. Springwood Shopping Center*, 644 S.W.2d 705 (Tex. 1982; *Slaughter v. Qualls*, 139 Tex. 340 (Tex. 1942); *Ford v. Emerich*, 343 S.W. 2d 527, 531 (Tex. App.—Houston 1961, writ ref'd n.r.e.); *Faine v. Wilson*, 192 S.W. 2d 456, 458 (Tex. App.—Galveston 1946); *Murchison v. Freeman*, 127 S.W. 2d 369, 372 (Tex. App.—El Paso 1939, writ ref'd) (the terms of a deed of trust are strictly construed).

35. Any irregularity making the act void passed *no* title. *Henke v. First Southern Properties, Inc.*, 586 S.W. 2d 617, 620 (Tex. App.—Waco 1979, writ ref'd n.r.e.). Texas is a lien theory state, which means title remains in the hands of the homeowner. *Taylor v. Brennan*, 621 S.W.2d 592, 593 (Tex. 1981).

36. In *University Savings Assoc. v. Springwood Shopping Center*, 644 S.W.2d 705 (Tex. 1982), the court opined:

> Texas courts have consistently held that the terms set out in a deed of trust must be strictly followed. *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671 (1942); *Michael v. Crawford*, 108 Tex. 352, 193 S.W. 1070 (1917). As this Court has stated, "[a] trustee has no power to sell the debtor's property, except such as may be found in the deed of trust." Slaughter v. Qualls, supra at 675. Thus, when a foreclosure sale is held pursuant to the power granted in the deed of trust, the power of sale can only be exercised by those authorized in the instrument. Michael v. Crawford, supra. The reason that "strictness" is required in following the terms of the power granted by the deed of trust is to protect the property of the debtor. Walker v. Taylor, 142 S.W. 31, 33 (Tex. Civ. App. -- San Antonio 1911, writ ref'd). Failure to follow the terms of the deed of trust will give rise to a cause of action to set aside the trustee's deed. Slaughter v. Qualls, supra.

*Id.* at 706.

37. The strict construction of the Deed of Trust may seem harsh. The strict construction, though, does not leave the lender without remedies. The lender may sue on the note and seek a judicial order of foreclosure. It is only the contractual remedy of non-judicial foreclosure that is lost by the lender's failure to abide by the contract. In addition to the general rule that any ambiguity in a contract must be construed against the drafter (here, the lender), the rule of strict construction of Deeds of Trust has been firmly ensconced in Texas law for over a century. *Slaughter v. Qualls*, 139 Tex. 340 (Tex. 1942). A trustee's power to sell note and deed of trust at foreclosure arises from the language of the particular deed of trust. See, e.g., *Winters v. Slover*, 251 S.W. 2d 726 (Tex. 1952); *Ford v. Emerich*, 343 S.W. 2d 527, 531 (Tex. App. – Hous. 1961, writ ref'd n.r.e). A trustee has no power to sell the debtor's note and deed of trust except such as may be found in the deed of trust, and the powers therein conferred must be strictly followed. *Slaughter v. Qualls*, 162 S.W. 2d 671, 675 (Tex. 1942); *Faine v. Wilson*, 192 S.W. 2d 456, 458 (Tex. App. – Galveston 1946); *Murchison v. Freeman*, 127 S.W. 2d 369, 372 (Tex. App. – El Paso 1939, writ ref'd) (the terms of a deed of trust are **strictly construed**). If the trustee conducting a foreclosure sale has no power or authority to offer the note and deed of trust for sale, or if there exists a defect or irregularity in the foreclosure process that would render the foreclosure sale void, then the purchaser at foreclosure cannot acquire title to the note and deed of trust. *Henke v. First Southern Properties, Inc.*, 586 S.W. 2d 617, 620 (Tex. App. –

Waco 1979, writ ref'd n.r.e.). In other words, if the conditions and limitations on the trustee's power to sell a note and deed of trust at foreclosure, as set forth in the deed of trust, were never fulfilled, then the trustee's power to sell never lawfully came into being, and the foreclosure sale and trustee's deed are void. *Slaughter v. Qualls*, 162 S.W. 2d 671, 675 (Tex. 1942). The trustee must strictly adhere to the terms of the power for the power "admits of no substitution and no equivalent." *Michael v. Crawford*, 108 Tex. 352, 193 S.W. 1070 (1917). There are few examples of Texas law that are clearer or better established. In *Fuller v. O'Neal*, 69 Tex. 349, 6 S.W. 181 (1887) the Texas Supreme Court wrote: "The course marked out for the trustee to pursue must be strictly followed by him for the method of enforcing the collection through such deeds is a harsh one. The grantor of the power is entitled to have his directions obeyed; to have the proper notice of sale given; to have it to take place at the time and place, and by the person appointed by him."

38. Furthermore, as the 5th Circuit explained recently: "Texas courts have not 'expressly adopted' the *Restatement's* note-follows-the-mortgage presumption precisely because longstanding United States Supreme Court and Texas precedent *requires* that a foreclosing party be the holder of the promissory note in order to foreclose." *Reinagel v. Deutsch Bank National Trust Company*, 2013 U.S. App. LEXIS 14089 (5th Circuit (Tex.) July 11, 2013) (Graves, J., concurring; quoting *Carpenter v. Longan*, 83 U.S. 271, 274 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.")).

39. This has been Texas law for more than 150 years, and is an express provision of Texas law **uncontradicted to this day by the Texas Supreme Court.** *See* 30 TEX. JUR. 3D *Deeds of Trust and Mortgages* § 119 ("As a mortgage can have no legal effect apart from the debt or obligation of which it is designed to secure payment, any attempt to assign or transfer it apart from the debt is a nullity").

40. Historical analysis of Texas law proves this clear fact. *See Duty v. Graham* 12 Tex. 427 (1854) ("The assignment of the interest of the mortgagee in the land, without an assignment of the debt, is considered to be without meaning or use."). The clear law runs

unchanged through January 2012. *See Robeson v. Mortgage Elec. Registration Sys.*, 2012 Tex. App. LEXIS 137, slip op. at 15-16 (Tex. App.—Fort Worth Jan. 5, 2012) ("A mortgage typically follows the note it secures. *Gilbreath v. White*, 903 S.W.2d 851, 854 *(Tex. App.-- Texarkana 1995, no writ); J.W.D., Inc. v. Federal Ins. Co., 806 S.W.2d 327, 329-30 (Tex. App.--Austin 1991, no writ);* Lawson v. Gibbs, 591 S.W.2d 292, 294 (Tex. Civ. App.--Houston [14th Dist.] 1979, writ ref'd n.r.e.).") (emphasis added within the string citation).

41. In *Pope v. Beauchamp*, 219 S.W. 447, 448 (1920), the Texas Supreme Court quoted with approval *Carpenter v. Longan*, 83 U.S. 271 (1872), which it again approvingly cited in *West v. First Baptist*, 71 S.W. 2d 1090, 1098-99 (Tex. 1934). And again in *University Savings v. Security Lumber*, 423 S.W.2d at 292, the high court affirmed the principle.

42. Plaintiffs claim all damages, either liquidated or unliquidated, arising out of this action, in that his title has been clouded, his credit affected, his ability to accurately deal with the true mortgagee of his Note has been damaged, and he has experienced mental anguish over this wrongful activity of Defendants.

### Violations of Texas Finance Code and TDCA

43. Plaintiff re-alleges and incorporate by reference the foregoing allegations.

44. Defendants have provided no evidence that they are in entitled to foreclose, as there is not a clear chain of title. These actions are thereby fraudulent, deceptive, and/or misleading representations actionable under the Texas Finance Code § 392.304, the Texas Debt Collection Act ("TDCA"). Defendants are in violation of Texas Finance Code § 392.301(8), therefore having no authority to collect on the mortgage. All alleged transfers, assignments, and misstatements of facts regarding the mortgage by Defendants, made under void circumstances, constitute violations of the Texas Finance Code.

45. Plaintiff claims all damages, either liquidated or unliquidated, arising out of this action in that their ability to retain his home has been affected and title to his home has been clouded.

### Suit to Quiet Title

46. Plaintiffs claim herein that the chain of title to the Property is clouded due to the lack of a proper assignment of the Note. As Texas is a lien theory state, title rests with Plaintiffs

and thus *they have a superior claim and right to title* as opposed to Defendant US Bank. Being the party who can challenge an assignment void under Texas law, the burden is on Defendants, once challenged, to prove the chain of title. Absent such proof, Plaintiffs' title stands and should be quieted in their name as Defendants' collective actions clouded the title and it is no longer marketable. Plaintiffs seek a decree quieting title to the Property with title fully vested in the Plaintiffs based upon the superiority of their title interest as compared with Defendants, who have no clear chain of title

### Declaratory Judgment

47. Pursuant to Chapter 37 of the Texas Civil Practices & Remedies Code, Plaintiffs seek declaratory relief, for the Court to declare that the documents identified in ¶¶ 17-22, *supra*, are void and of no effect.

48. Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Plaintiffs seek declaratory relief to establish the claims and interests in the subject property. In making its determination, Plaintiffs request that the Court find that there is no valid assignment or transfer of interest from Resmae to US Bank by virtue of the assignment of the Deed of Trust by MERS.

49. Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Plaintiffs seek declaratory relief to establish that all documents subsequent to the assignment by MERS from Resmae to US Bank are without authority.

### Breach of Contract

50. Plaintiffs re-allege and incorporate by reference the foregoing allegations.

51. On 11/10/09, Plaintiffs and Defendants Resmae, with MERS listed as "nominee" only, executed a valid and enforceable written contract. Plaintiffs attach a copy of the contract as Exhibit 1 and incorporate it by reference. The contract provided that Plaintiffs would grant certain powers to Defendants to be exercised in the manner listed should Plaintiffs default. Possible default on the Note is contemplated in the contract and the remedies in the Deed of Trust are exclusively listed and strictly construed by agreement of Plaintiff, Resmae, and MERS.

52. Defendants Resmae's and MERS' actions in attempting to assign the Deed of Trust by MERS absent authority is a breach of that contract.

53. Defendant's breach caused injury to plaintiff, which resulted in the following damages: losing the home via void sale at a foreclosure proceeding, mental anguish, and all consequential damages.

### Tortious Interference with Contract

54. Plaintiffs had a valid contract with Resmae with MERS listed as "nominee."

55. Defendants US Bank, Koch, Select, Gamez, Carter, and Schwartz knew or had reason to know of Plaintiffs' contract with Resmae and Plaintiffs' interest in the contract. Plaintiffs contracted with Resmae with MERS listed as "nominee" specifically for those limited actions specified within the Deed of Trust. *See* Exh. 1.

56. Defendant willfully and intentionally interfered with Plaintiffs' contract with Resmae and MERS by their actions in violation of the Deed of Trust in pursing a void foreclosure for which they had no authority.

57. Defendant's interference proximately caused injury to plaintiff, which resulted in the following actual damage or loss: loss of the home at a void foreclosure sale; mental anguish, and all consequential damages still accruing from the actions of Defendants.

58. Plaintiffs seek unliquidated damages within the jurisdictional limits of this Court.

### Violation of CPRC § 12.002

59. Texas Civil Practices & Remedies Code Section 12.002 reads:

Sec. 12.002. LIABILITY. (a) A person may not make, present, or use a document or other record with:

(1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code,

evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3) intent to cause another person to suffer:

(A) physical injury;

(B) financial injury; or

(C) mental anguish or emotional distress.

60. By filing the documents ¶¶ 17-28, *supra*, each Defendant who caused a filing to be falsely made acted with intent. As Defendants should be aware of the consequences, thus, the filings were made knowingly and with intent. *See Hernandez v. Vanderbilt Mortg. and Finance, Inc.*, 2010 WL 3359559, at *4 (S.D. Tex. Aug. 25, 2010) ("Texas courts have interpreted the 'intent' element to require only that the person filing the fraudulent lien be aware of the harmful effect that filing such a lien could have") (citing *Taylor Elec. Services, Inc. v. Armstrong Elec. Supply Co.*, 167 S.W.3d 522, 531–32 (Tex.App.—Ft. Worth 2005, no pet.)). Documents associated with a foreclosure sale, falsely filed, make the participating parties liable for damages. *See Bernard v. Bank of Am., N.A.*, 2013 WL 441749, at *4 (Tex. App.—San Antonio Feb. 6, 2013, no pet.).

<u>Accounting</u>

61. Plaintiffs request an order for an accounting of all transactions on this mortgage loan. An accounting is necessary in order to determine whether the payment obligation on the original note has in fact been satisfied; also, to determine which entity (or investor) is the legitimate holder of Plaintiffs' loan.

<u>Request for Temporary Relief</u>

62. Plaintiffs' harm is imminent to their homestead. Unless this Honorable Court maintains the *status quo* pending the resolution of this suit and restrains the Defendants from evicting Plaintiffs from the subject property during the pendency of this cause, Plaintiffs will suffer immediate and irreparable injury, for which there is no adequate remedy at law to give Plaintiffs complete, final and equal relief. More specifically, Plaintiffs will show unto the court the following: (a) the harm to Plaintiffs is imminent because Plaintiffs will lose their property; (b) there is no adequate remedy at law which will give

Plaintiffs complete, final and equal relief if the Temporary Restraining Order is not granted and any transfer of the property is allowed to take place; (c) Plaintiffs have met the burden by establishing each element, which must be present before injunctive relief can be granted by this Court, therefore Plaintiffs are entitled to the requested Temporary Injunction.

63. Plaintiffs request this Honorable court to enjoin the Defendants from foreclosing against Plaintiff, selling, evicting, or otherwise taking possession of the subject property during the pendency of this cause, or from otherwise disturbing or attempting to disturb Plaintiffs' peaceable possession and enjoyment of the property because (1) they had no standing to foreclose, and (2) the eviction was interwoven with issues of title that Defendants would not have a clear superior right of possession.

64. Plaintiffs request this Court to also issue injunctive relief during the pendency of this suit.

65. Plaintiffs are likely to succeed on the merits of this lawsuit.

### Probable right to relief

66. Defendants unless restrained, will cause Plaintiffs to suffer irreparable harm unless the foreclosure and subsequent actions by Defendants are enjoined, depriving Plaintiffs of the use and enjoyment of the property. Additionally, Plaintiffs will lose the right to sell or mortgage the property at some future date and will not obtain full benefit of the appreciated value. Plaintiffs will show the Court that there is no remedy at law that is clear and adequate to protect Plaintiffs' property interest against such void foreclosure. This request for injunctive relief is so that justice may be done, not merely for delay. Plaintiffs have performed all conditions precedent.

### Attorney's fees

67. Plaintiffs have retained Stephen D. Casey to represent them in this action, and have agreed to pay reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to the Plaintiffs would be equitable and just and therefore authorized by Texas Civil Practice and Remedies Code § 37.009.

### Jury demand

68. A jury demand is made at this time and Plaintiffs hereby tender the jury fee.

Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that:

69. Defendants be restrained from following actions subsequent to the foreclosure sale on Plaintiffs' property by temporary restraining order without notice;

70. Defendants be cited to appear and show cause, and that upon such hearing, a temporary injunction be issued enjoining defendant, their agents, servants, and employees, from evicting Plaintiffs from said property, specifically:

> LOT 29, BLOCK "SS", TEXAS OAKS SECTION EIGHT-A, A SMALL LOT SUBDIVISION, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN VOLUME 86, PAGES 95B-95C OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS.

71. the Court set a minimal bond based on affidavit evidence;

72. the Court issue a permanent injunction on final trial on the merits of this cause, permanently enjoining Defendants and their agents, servants, and employees form directly or indirectly foreclosing on the subject property, in any manner;

73. upon final hearing that the Court declares the title quieted in favor;

74. Plaintiffs recover costs of suit, damages for statutory violations, attorney's fees, exemplary damages as allowed by law or statute; and

75. Plaintiffs be awarded pre-judgment interest and post-judgment interest as allowed by law.

76. Such other further relief to which Plaintiffs may be entitled at law or in equity.

Respectfully submitted,

CASEY LAW OFFICE, P.C.

Stephen Casey
Texas Bar No. 24065015

600 Round Rock West Drive, Suite 602
Round Rock, Texas 78681
Telephone: 512-257-1324
Fax: 512-853-4098
stephen@caseylawoffice.us

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiffs' Original Petition and request for injunctive relief was served upon Defendants by the manner and method indicated below on this day, September 30, 2013.

*Via private process server*

Stephen Casey; *Counsel for Plaintiff*

04/257200 6187/SXS25

Return To:
RESMAE MORTGAGE CORPORATION

6 Pointe Drive
Bre○, CA 92821

Prep○ By:
PO○SK○ & BETTEL, LLP
○○0 I○○0 WEST, STE. 1600
SAN ○NT○○TX 78230

DT    2006247919
19 PGS

Loan #: 100253○05

── Above This Line For Recording Data ──

**DEED OF TRUST**

MIN 100335010025269054

**DEFINITIONS**

Words used in multiple sections of this docu○ ○fined ○elow and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rul○ ○○○ ○g th○ ○ge of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which○ ○ted December 20, 2006 together with all Riders to this document.

(B) **"Borrower"** is ANGELA DUNN, joined herein pro f○ ○ by ○r husband, SIMEL ERIC OSBOURNE JENKINS-BEY

Borrower is the grantor under this Security Instrument.

(C) **"Lender"** is RESMAE MORTGAGE CORPORATION

Unofficial Copy

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3044 1/01

○○○-6A(TX) (0506).01

Page 1 of 16                     Initials: _SB_ _AD_

VMP Mortgage Solutions, Inc.

Lender is a corporation
organized and existing under the laws of    the State of Delaware
Lender's address is    6 Pointe Drive, Brea, CA 92821

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is ALLAN B. POLUNSKY
. Trustee's address is
8000 I.H. 10 West, Suite 1600, San Antonio, TX 78230-3892

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is a beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated December 20, 2006
The Note states that Borrower owes Lender    One Hundred Twenty Four Thousand And
No/100ths                                                                            Dollars
(U.S. $ 124,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    January 1, 2037
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] Balloon Rider
- [ ] Planned Unit Development Rider
- [ ] 1-4 Family Rider
- [ ] VA Rider
- [ ] Biweekly Payment Rider
- [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

Initials: _SB AP_

-6A(TX) (05061.01)                    Page 2 of 16                    Form 3044  1/01

Unofficial Copy

(O) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the TRAVIS County

[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

LOT 29, BLOCK SS, OF TEXAS OAKS, SECTION EIGHT-A, A SMALL LOT SUBDIVISION, AN ADDITION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF; RECORDED IN BOOK 84, PAGE(S) 95B-95C, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS.

Parcel ID Number:  04361908160000
10614 MARIAS RIVER DRIVE
AUSTIN
("Property Address"):

which currently has the address of [Street]

[City], Texas 78748 [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this

Initials: _SBW_

Unofficial Copy

Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Initials: _SBP_

Form 3044  1/01

Unofficial Copy

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _____

Form 3044   1/01

-6A(TX) (0505).01

Page 5 of 16

Unofficial Copy

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any

initials: _____

Unofficial Copy

interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _SB AD_

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: _____

Unofficial Copy

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: _8 b Ab_

-6A(TX) (0506).01     Page 9 of 16     Form 3044  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually

initials: _SbHD_

VMP-6A(TX) (0508).01                    Page 10 of 16                    Form 3044  1/01

received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan

Initials: _____

servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _SB AD_

Form 3044  1/01

-6A(TX) (0506).01

Page 12 of 16

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Initials: _____

-6A(TX) (0506).01                    Page 13 of 16                    Form 3044  1/01

Unofficial Copy

(Page 14 of 19)

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such [ac]t or omission is willful.

25. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's repre[sen]tation that such amounts are due and are secured by valid liens against the Property. Lender shall [be su]brogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or [ho]lder [of] any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by [assignmen]t or are released by the holder thereof upon payment.

26. P[arti]al Invalidity. In the event any portion of the sums intended to be secured by this Security Instrum[ent c]annot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those [porti]on[s not sec]ured hereby.

27. P[urc]hase [Mo]ney; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; [Ac]know[led]g[ment of] Cash Advanced Against Non-Homestead Property. Check box as applicable:

☐ **Purchase Mo[ney]**
The funds advanced [to Bor]row[er un]der the Note were used to pay all or part of the purchase price of the Property. The Note a[lso i]s pri[maril]y secured by the vendor's lien retained in the deed of even date with this Security Instrument conve[ying t]he Pr[o]perty to Borrower, which vendor's lien has been assigned to Lender, this Security Instrume[nt] bei[ng additio]nal security for such vendor's lien.

☐ **Owelty of Partition.**
The Note represents funds advanced by [Lend]er at [t]he special instance and request of Borrower for the purpose of acquiring the entire fee simple [title] to the [prop]erty and the existence of an owelty of partition imposed against the entirety of the Property by [a court] or b[y a] written agreement of the parties to the partition to secure the payment of the Note is e[xpre]ssi[y ack]now[ledge]d, confessed and granted.

☒ **Renewal and Extension of Liens Against Homes[tead P]roperty.**
The Note is in renewal and extension, but not in ex[ti]nguishment, [of the in]debtedness described on the attached Renewal and Extension Exhibit which is incorporate[d by] refer[enc]e. Lender is expressly subrogated to all rights, liens and remedies securing the original [hol]der of a [not]e evidencing Borrower's indebtedness and the original liens securing the indebtedness ar[e re]newed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Proper[ty.]**
The Note represents funds advanced to Borrower on this day at Borro[we]r's [requ]es[t an]d Borrower acknowledges receipt of such funds. Borrower states that Borrower does not no[w and] do[es not in]tend ever to reside on, use in any manner, or claim the Property secured by this Security Instru[ment] as a [bus]iness or residential homestead. Borrower disclaims all homestead rights, interests and ex[emptio]ns re[lated to] the Property.

28. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension o[f cred]it as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitut[ion. If] the Property is used as Borrower's residence, then Borrower agrees that Borrower will r[eceive n]o cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the

Initials: _S B AD_

Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                                                            -Borrower
                                                   ANGELA DUNN

_____                    _____ (Seal)
                                                                                            -Borrower
                                                   SIMEL ERIC OSBOURNE JENKINS-BEY

_____                    _____ (Seal)
                              (Seal)                                                         -Borrower
                              -Borrower

_____ (Seal)             _____ (Seal)
                              -Borrower                                                      -Borrower

_____ (Seal)             _____ (Seal)
                              -Borrower                                                      -Borrower

Unofficial Copy

-6A(TX) (0606).01                    Page 16 of 16                    Form 3044  1/01

**STATE OF TEXAS**
County of Trau3

Before me Samantha Sauer _____ on this day personally appeared
ANGELA DUNN and SIMEL ERIC OSBOURNE JENKINS-BEY

know__ me _____ oved to me on the oath of *Davus Reuse*
or through _____ ) to be the person whose name is subscribed to the
foregoing _trume__ _nd ac_nowledged to me that he/she/they executed the same for the purposes and
consideration _____ exp_____.

Given under m___ _nd an___ o_ office this 20 day of December, 2004.

(Seal)

SAMANTHA ANN ___CS
NOTARY PU___C
STATE OF T____
My Commission E___
FEBRUARY 06, 2008

Notary Public

My Commission Expires:

___-6A(TX) (0506).01                    Page 16 of 16                    ___044   1/01

Initials: ___

Loan #: 1002526905

## RENEWAL AND EXTENSION EXHIBIT

This **RENEWAL AND EXTENSION EXHIBIT** is incorporated into and shall be deemed to amend and supplement the Deed of Trust ("**Security Instrument**") of even date herewith. **Security Instrument** is granted by the **Borrower(s)** ("**Borrower**") to secure **Borrower's** indebtedness ("**Note**") to **Lender** (sometimes referred to as the "**Beneficiary**" or "**Holder of the Note**"), the **Note** secured hereby is in renewal and extension but not in extinguishment of that indebtedness, whether one or more, described as follows:



That certain promissory note secured by an instrument recorded in/under 2004193711, Real Property Records, TRAVIS County, Texas.

That certain promissory note secured by an instrument recorded in/under 2004193712, Real Property Records, TRAVIS County, Texas.

Unofficial Copy

Page 1 of 2

*PB557-1.1204*

THE LENDER HEREBY SECURED IS EXPRESSLY SUBROGATED TO ALL RIGHTS, LIENS, EQUITIES AND REMEDIES SECURING THE ORIGINAL HOLDER(S) OF SAID DEBT(S) AND THE ORIGINAL LIEN(S) SECURING THE SAME ARE HEREBY RENEWED AND EXTENDED TO DATE OF MATURITY OF THE INDEBTEDNESS HEREBY SECURED IN RENEWAL AND EXTENSION THEREOF. IN THE EVENT ANY PORTION OF THE SUMS INTENDED TO BE SECURED BY THE SECURITY INSTRUMENT CANNOT BE LAWFULLY SECURED THEREBY, PAYMENTS IN REDUCTION OF SUCH SUMS SHALL BE APPLIED FIRST TO THOSE PORTIONS NOT SECURED THEREBY. BORROWER(S) ACKNOWLEDGES THAT THE LIEN(S) SECURING THE PRIOR NOTE IS VALID, THAT IT SUBSISTS AGAINST THE PROPERTY, AND THAT BY THIS INSTRUMENT IT IS RENEWED AND EXTENDED IN FULL FORCE UNTIL THE NOTE IS PAID, EVEN THOUGH THE PRIOR LIEN(S) MAY BE RELEASED AND NOT ASSIGNED TO LENDER.

This renewal and extension is not a refinance of a debt any portion of which is an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution.

In addition to the refinance of principal and any interest, if Lender is advancing all or a portion of the costs necessary to refinance debt on the Property, Borrower acknowledges that these costs are reasonable and necessary costs to refinance such debt. Borrower has received no funds from this Loan, but only the benefit of those sums advanced for the payment of 1) principal and any interest on loans being refinanced, 2) any reasonable and necessary closing costs, and 3) any refund to Borrower of closing costs owed in connection with the Loan advanced by Borrower. If any portion of the Loan secures a debt for work or material used in constructing improvements on the Property, Borrower understands that funds not used in such construction, if any, must first be used to reduce the unpaid principal of the Loan or, at Lender's option, the Note must be modified to evidence the actual funds advanced.

_____          _____
(Borrower) ANGELA DUNN                    (Borrower) SIMEL ERIC OSBOURNE JENKINS-BEY


_____          _____
(Borrower)                                (Borrower)


_____          _____
(Borrower)                                (Borrower)


_____          _____
(Borrower)                                (Borrower)

PBS57-2.0405

## FILED AND RECORDED

OFFICIAL PUBLIC RECORDS



2006 Dec 29 10:08 AM    2006247919

ESPINOZAC $88.00

DANA DEBEAUVOIR COUNTY CLERK

TRAVIS COUNTY TEXAS

**CERTIFIED**
**BILL OF COST**

**AMALIA RODRIGUEZ-MENDOZA**
District Clerk, Travis County
P.O. Box 679003, Austin, TX 78767
(512) 854-9457

## BILL OF COST FOR COURT COSTS/FINES

September 30, 2013

STEPHEN DANIEL CASEY
600 ROUND ROCK WEST DR STE 602
ROUND ROCK, TX 78681-5005
BUSINESS PHONE:(512)257-1324  FAX:(512)853-4098

Cause Number: D-1-GN-13-003401

ANGELA DUNN AND SIMEL BEY
VS
RESMAE MORTGAGE CORPORARTION;

**A ISSUANCE OF CITATIONS HAS BEEN FILED WITHOUT PAYMENT ON SEPTEMBER 30, 2013 IN THE ABOVE REFERENCED CASE.**

**Total Amount Due for Filing: $20.00   (PL-1)**

Please direct your payment to the attention of the Accounting Department within ten (10) days.

If you have any questions, or need further assistance, please contact the District Clerk's office.

Thank you,

THE STATE OF TEXAS    }
   COUNTY OF TRAVIS    }  I, Amalia Rodriguez-Mendoza, Clerk of the District Court of Travis County, Texas certify that the above and foregoing is a true and correct copy of the Bill of Cost in the numbered and styled cause.

AMALIA RODRIGUEZ-MENDOZA
Travis County District Clerk

Texas Rules of Civil Procedure Rule 129   How Costs Collected
If any party responsible for costs fails or refuses to pay the same within ten days after demand for payment, the clerk or justice of the peace may make certified copy of the bill of costs then due, and place the same in the hands of the sheriff or constable for collection. All taxes imposed on law proceedings shall be included in the bill of costs. Such certified bill of costs shall have the force and effect of an execution. The removal of a case by appeal shall not prevent the issuance of an execution for costs.

Type/Form Number - B13 - 000002355